IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CATHERINE AND STEPHEN APPLE, INDIVIDUALLY AND AS NEXT FRIENDS OF ALEXANDER APPLE, A MINOR AND STEPHANIE APPLE, INDIVIDUALLY | § § § § § | |
| VS. | § § | NO. A06CA691 LY |
| BMW OF NORTH AMERICA, L.L.C.; BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT; AND SIEMENS VDO AUTOMOTIVE AG | § § § § § | |

**BMW'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendants Bayerische Motoren Werke Aktiengesellschaft and BMW of North America, LLC (collectively "BMW") respectfully file this response to Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs' motion should be denied.

**I.      Introduction**

Plaintiffs' motion challenges BMW's assertion of a statutory non-liability presumption that applies when a product manufacturer establishes it complied with applicable mandatory federal regulations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.008(a) (Vernon 2005). Plaintiffs do not rely on evidence rebutting the presumption; rather, plaintiffs argue only that the presumption does not apply. They are wrong.

**II.     Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery matters on file, and affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When the moving party is the plaintiff seeking summary judgment on a defendant's affirmative defense, the plaintiff must offer sufficient competent summary judgment proof to negate at least one element of the affirmative

499637.1

defense.[1] Although construction of statutes and regulations presents a pure legal issue for the Court, whether a statutory or regulatory standard is met often presents a mixed question of law and fact. *See Edwards v. Aguillard*, 482 U.S. 578, 595-96 (1987) (despite affidavits, case could be decided using plain language of statute); *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001) (discussing summary judgment in cases involving mixed question of law and fact). When construing a Texas statute, this Court applies Texas rules of statutory construction. *See International Truck & Engine Corp. v. Bray*, 372 F.3d 717, 722 (5th Cir. 2004).

### III. Texas Civil Practice & Remedies Code Section 82.008

As part of a comprehensive tort reform bill, the Texas Legislature enacted Texas Civil Practice & Remedies Code section 82.008, which creates a rebuttable presumption of non-liability for product manufacturers when: (1) the formulation, labeling, or design about which the plaintiff complains complied with mandatory safety standards or regulations adopted by a federal agency; (2) the mandatory safety standards or regulations applied to the product at the time of manufacture; and (3) the mandatory safety standards or regulations "governed the product risk that allegedly caused harm." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.008(a) (Vernon 2005). In order to rebut the presumption, a plaintiff must "establish[]" either:

> (1) the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or
>
> (2) the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

*Id.* § 82.008(b).

---

[1] BMW does not concede that the presumption at issue is an "affirmative defense" subject to summary judgment. Under Federal Rule of Evidence 302, Texas law determines the effect of the presumption granted in section 82.008(a). In Texas, presumptions are not evidence; rather, presumptions govern the burdens of production and/or persuasion and are rules of law "requiring the trier of fact to reach a particular conclusion in the absence of evidence to the contrary." *Temple Ind. Schol. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995); *accord Forshey v. Gober*, 226 F.3d 1299, 1304 (Fed. Cir. 2000) (presumption is not evidence but instead governs burden of proof).

499637.1

No Texas state appellate court has yet construed section 82.008, but the Fifth Circuit recently did so in *Wright v. Ford Motor Co.*, 508 F.3d 263, 269-71 (5th Cir. 2007). The *Wright* holdings and reasoning control the outcome of this case, despite plaintiffs' claim to the contrary on pages 5-6 of their motion.

In *Wright*, a young child was killed when a Ford Expedition (a large SUV) struck and ran over him. *See id.* at 266. The child was walking behind the Expedition, the driver of which was backing out of a parking place. *See id.* The child's parents sued the SUV's manufacturer, claiming that a reverse sensing system should have been mandatory, rather than optional, on all Expeditions, because the area immediately behind an Expedition is in a large blind spot. *See id.* at 266-67. The trial court instructed the jury "to rebuttably presume that the Ford Expedition was not defectively designed" pursuant to section 82.008. *See id.* at 268. Following a verdict and judgment for the manufacturer, the plaintiffs appealed, contending that the jury instruction was erroneous, because the regulatory standard at issue did not apply in light of the defect alleged and, even if it did, the presumption vanished once the trial court admitted rebutting evidence. *See id.* at 269, 272.

The Fifth Circuit affirmed. First, the court had to determine if the mandatory federal safety standard the manufacturer relied upon – Federal Motor Vehicle Safety Standard ("FMVSS") 111 – was "applicable to the product at the time of manufacture" and "governed the product risk that allegedly caused harm." *Id.* at 268, 270. FMVSS 111, codified at 49 C.F.R. 571.111, set the standards for rearview mirrors in vehicles. *See id.* at 269 n.3. The court initially analyzed the regulation's statement of purpose and concluded that it governed the risk at issue: the risk of injury or death when a vehicle's driver does not have a clear, unobstructed view to the rear.[2] *See id.* at 269 & n.3. Equally important to the court's holding that the standard applied to

---

[2] The purpose of FMVSS 111, which is entitled "Rearview Mirrors," is "to reduce the number of deaths and injuries that occur when the driver of a motor vehicle does not have a clear and reasonably unobstructed view to the rear." 49 C.F.R. 571.111 S2 (1998). The regulatory history of FMVSS 111 expressly stated that the standard addressed blind spots.

3

the risk allegedly causing the harm was the fact that the National Highway Traffic Safety Administration ("NHTSA")[3] had "expressly state[d] that [FMVSS 111] addresses rear blindspot risks" (*id.* at 270) and had considered amending FMVSS 111 to require the very sort of rear sensing system plaintiffs were advocating in their lawsuit. *See id.* at 272. The court concluded that "FMVSS 111 applies to the product risk" asserted in the case before it. *Id.*[4]

The Fifth Circuit's careful analysis of section 82.008 and the FMVSS at issue in *Wright* gives this Court a roadmap for the instant case. Moreover, *Wright* is controlling in that regard. Plaintiffs' feeble attempt to distinguish *Wright* on the basis that a different FMVSS was at issue ignores the Fifth Circuit's holding and reasoning regarding how trial courts are to determine whether a mandatory federal safety standard "governed the product risk that allegedly caused the harm."

### IV.     FMVSS 208 Applies To The Product Risk That Allegedly Caused The Harm To Ms. Apple

Whether a mandatory federal safety standard governs the product risk that allegedly caused the harm is a question of law to be determined from the standard for regulation and the plaintiffs' contentions and pleadings. Testimony, even from an expert witness, concerning a question of law is not admissible. *See C.P. Interest, Inc. v. Calif. Pools, Inc.* 238 Fed.R 690, 697, 5th Cir. 2001. As a result, none of the deposition and affidavit testimony attached to plaintiffs' motion is admissible on the issue of section 82.008's applicability.

---

[3] NHTSA is the agency responsible for promulgating the Federal Motor Vehicle Safety Standards applicable to all passenger cars sold in the United States. NHTSA is part of the Department of Transportation ("DOT").

[4] The second issue in *Wright* was whether the jury should be charged on the presumption. Again relying on the unambiguous statutory language, the Fifth Circuit held that the 82.008 presumption is not a "vanishing" one. *Wright*, 508 F.3d at 273-74. A vanishing presumption disappears when contrary evidence is introduced, making the issue one for the jury, but not one on which the jury is instructed. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993) (common-law presumption that warnings are read and heeded). Section 82.008(b), however, expressly states that the presumption at issue "may" be rebutted only if the plaintiff "establish[es]" one of the two facts in that subdivision. The Fifth Circuit placed great weight on the legislature's choice of language in holding that, absent conclusive proof rebutting the presumption, the "statute proceeds on the assumption that any such fact question as *whether* the presumption has been rebutted will be submitted to the jury." *See Wright*, 508 F.3d at 374 (emphasis in original).

The purpose of FMVSS 208 (codified at 49 C.F.R. 571.208 (1996))[5] the regulation at issue in this case, is stated in the regulation: "The purpose of this standard is to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems." 49 C.F.R. 571.208 S2 (1996). FMVSS 208 has a long regulatory history that is not mentioned by plaintiffs, but that demonstrates its applicability in this case. *See* 62 Fed. Reg. 62405, 62411 (1997) (noting, in 1997, "[t]oday's air bag requirements evolved over a 25-year period"). DOT first mandated seatbelts in all cars in 1967. 32 Fed. Reg. 2408, 2415 (1967). Within two years, however, it became apparent that Americans were just not buckling up. *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 875 (2000) (citing 34 Fed. Reg. 11148 (1969)). Between 1970 and 1984, DOT amended FMVSS 208 a number of times with the goal of achieving full passive restraints at some point in the future.[6] Under the 1984 version, car manufacturers had to install automatic protection using either automatic belts or air bags in all passenger cars by 1986. 62 Fed. Reg. 62406, 62411& n.12 (1997) (discussing history of FMVSS 208).

In *Geier*, the United States Supreme Court construed the 1984 version of FMVSS 208 as reflecting the following "significant considerations": (1) the importance of wearing seat belts; (2) only 20% of Americans were wearing manual seat belts in cars, despite the risk of severe injury

---

[5] The plain language of section 82.008(a) mandates that the Court use the version of FMVSS 208 in effect at the time the Apple vehicle was manufactured.

[6] In 1970, DOT amended FMVSS 208 to authorize some passive restraints, expressly recognizing that air bags were one such restraint. *See Geier*, 529 U.S. at 875. Two years later, FMVSS 208 was again amended, this time to require full passive protection for front seat occupants in vehicles manufactured after August 15, 1975. 37 Fed. Reg. 3911 (1972). The new regulation provided that, for cars made between 1972 and 1975, manufacturers had the choice of installing a fully passive restraint system (such as an air bag or automatic seatbelts) or keep manual belts with an added ignition interlock. *Id.* In 1974, NHTSA approved detachable automatic belts, but required that such belts include an interlock system and a warning buzzer so that the belts would be reattached. *See* 39 Fed. Reg.14593 (1974). The public dislike for the interlock and buzzer led to Congress passing a law forbidding DOT from requiring them. *See Geier*, 529 U.S. at 876. Between 1976 and 1984, the passive restraint system requirements were suspended and then reinstated. *See id.* at 876-77.

or death in an accident if they were unbelted; (3) air bags could not make up entirely for the risk caused by being unbelted; (4) each of the different types of passive restraint systems had disadvantages; (5) "airbags brought with them their own special risks to safety, such as the risk of danger to out-of-position occupants (usually children) in small cars"; (6) the higher cost of air bags over other passive restraint devices; and (7) the possibility that the public would resist use of one type of then-available devices if it was required instead of allowing choice among several options. *See id.* at 877-78. In 1991, however, Congress passed a statute requiring that all passenger cars have air bags by 1996.

In order to provide the choices given manufacturers with regard to the type of passive restraint system, NHTSA chose to ensure safety by mandating performance standards all passive restraint systems had to meet. At the time BMW manufactured the Apple vehicle, the standard required that all vehicles with driver air bags meet certain injury criteria in a 30 m.p.h frontal barrier crash test using a Hybrid III test dummy, which had instrumentation for the head, chest and legs. *See* 49 C.F.R. § 571.208 S5, S6 (1996); *see also* 58 Fed. Reg. 59189 (1993). The test procedures required by NHTSA mandated using a 50th percentile male dummy and running the test with the dummy belted and unbelted.

By the mid-1990s, NHTSA had identified certain risks inherent with air bags, including an increased risk of injury or death to children seated in the front seat and small adults positioned close to the air bag. With the air bag technology available at the time, requiring that air bag meet injury criteria for both belted and unbelted dummies in the 30 m.p.h. frontal barrier test meant that air bags had to have sufficient size and aggressivity to protect the unbelted individual. Exh. 1, at 203-04, 242-48; 61 Fed. Reg. 40788 (1996). After receiving much public comment, NHTSA ultimately amended FMVSS 208, effective March, 1997 (after the Apple vehicle was manufactured) to allow manufacturers to temporarily depower air bags until "smart bag"

6

technology[7] was available and to use a sled test (rather than the frontal barrier test) for unbelted dummies. 62 Fed. Reg. 12960, 12961-62 (1997) (describing previous belted and unbelted tests and explaining that temporary changes made "to ensure that vehicle manufacturers *can* depower *all* air bags so they inflate less aggressively") (emphasis added).

One other event is worth noting. On April 15, 1994, NHTSA terminated rulemaking intended "to require compliance with a Neck Injury Criterion (NIC) instead of the currently specified Head Injury Criterion (HIC) in those compliance tests in which the test dummy's head does not contact any vehicle surface or component." 59 Fed. Reg. 18091 (1994). The reason given was that NHTSA believed it would be better to do research to develop a neck trauma criterion useful for all crash scenarios. *See id.* At the time the Apple vehicle was manufactured, no such uniform criterion had been developed, either by NHTSA or the automotive industry. *See* Exh. 1, at 115-121.

It is undisputed that the Apple vehicle complied with FMVSS 208. Exh. 2, at 43-44. The risk of harm claimed by plaintiffs is injury from a deploying air bag that plaintiffs suggest was too large and too aggressive. Under the reasoning used by the Fifth Circuit in *Wright*, the regulatory history demonstrates that FMVSS 208 addresses these risks by requiring passive restraint systems such as air bags to comply with injury criteria specified in the regulation. Over the years, NHTSA has been aware of the risks and amended its standards when the technology had developed to better address those risks. Indeed, as in *Wright*, NHTSA was aware of and considered the risks plaintiffs assert in its rulemaking. Particularly compelling is the agency decision shortly after the Apple vehicle was built to allow manufacturers to depower their air bag and, at the same time, change the test procedure for unbelted 50 percentile male dummies. *See* 62 Fed. Reg. 12960-12975.

---

[7] NHTSA defined "smart" air bags as including "any system that automatically prevents an air bag from injuring the two groups of children that experience has shown to be at special risk from air bags: infants in rear-facing child seats, and children who are out-of position (because they are unbelted or improperly belted) when the air bag deploys." 62 Fed. Reg. 813.

Finally, plaintiffs erroneously rely on isolated statements in House and Senate journals and *Ayala v. Ford Motor Company*, an Eastern District of Texas opinion (Exhibit E in plaintiffs' appendix) for their contention that FMVSS does not apply to the risk at issue in this case. As the *Wright* court correctly concluded (508 F3d at 270), Texas law does not allow resort to statements by legislators to construe unambiguous statutory language. See *AT&T Communic., L.P. v. Southwestern Bell Tel. Co.*, 186 S.W.3d 517, 528-29 & n.60 (Tex. 2006); *C&H Nationwide, Inc. v. Thompson*, 903 S.W. 2d 315, 328 (Tex. 1994) (Hecht, J., concurring and dissenting). As for *Ayala*, that opinion was issued on July 25, 2005, more than two years before the decision in *Wright*, and thus the Eastern District did not have the benefit of the Fifth Circuit's analytical framework, and thus addressed the defect, rather than the risk. The Fifth Circuit expressly rejected that approach. See *Wright*, 508 F.3d at 269-70. In any event, the *Ayala* court relied upon the fact that NHTSA had not regulated power window switches at all until after the vehicle at issue was manufactured. That is certainly not the case with air bags. As a result, even if the *Ayala* holding and reasoning is correct, the decision would not apply to this case.

For all of the reasons stated above, plaintiffs' motion for summary judgment should be denied.

WHEREFORE, PREMISES CONSIDERED, BMW respectfully prays that the Court deny the plaintiffs' Motion for Partial Summary Judgment, as well as for any further relief to which defendants are justly and equitably entitled.

499637.1

Respectfully submitted,

J. MICHAEL MYERS
State Bar No. 14760800
Direct Line:	(210) 731-6309
Direct Fax:	(210) 785-2909
E-mail: jmm@ball-weed.com
BALL & WEED, P. C.
Union Square II, Suite 600
10001 Reunion Place
San Antonio, Texas 78216

Colvin G. Norwood, Jr.
Texas Bar No. 24043489
MCGLINCHEY STAFFORD
643 Magazine Street
New Orleans, Louisiana 70130
(504) 596-2707
Fax: (504) 596-2861
E-mail: wnorwood@mcglinchey.com

ATTORNEYS FOR DEFENDANTS,
BMW OF NORTH AMERICA, LLC AND
BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been provided to all known counsel of record as indicated below, on the 27 day of June, 2008.

| | |
|---|---|
| Steven E. Van Gaasbeck<br>Attorney at Law<br>State Bar No. 20445400<br>5511 I-10 West, Suite 4<br>San Antonio, Texas 78201 | ☒ U.S. Certified Mail |
| William O. Whitehurst<br>Eugene W. Brees, II<br>Michelle M. Cheng<br>Whitehurst, Harkness, Ozmun & Brees, P.C.<br>P.O. Box 1802<br>Austin, Texas 78767-1802 | ☒ U.S. Mail |

J. Michael Myers

9

499637.1